COLEY *v.* HALL.

4-7181                                             175 S. W. 2d 979

Opinion delivered December 6, 1943.

420

*John W. Nance,* for appellant.

*Jeff Duty,* for appellee.

HOLT, J.   Mrs. Wallace Coley, a resident of Lee's Summit, Missouri, owned an 80-acre tract of land in Benton county, Arkansas. Appellee, Travis Hall, owned an adjoining tract. The Coley land was certified to the State for the nonpayment of the 1936 taxes, and on January 16, 1940, appellants, Raymond Blackburn and Beatrice Smith, obtained a tax deed, for the land, from the State.

Appellee, Hall, desiring to purchase this tract of land, and after he learned through a letter from Mrs. Coley's agent, T. M. George to Earl Teague, dated March 4, 1941, that she desired to sell, sent his agent Earl Teague, who was living on the land at the time, to negotiate with Mrs. Coley for its purchase. Teague testified that he contacted Mrs. Coley in Missouri, about buying the property and that she sent him to see her real estate agent, Todd M. George. "I made a contract to deal with Mr. George and she agreed to the contract. That contract was for the purchase of this property from Mrs. Coley. Q. And you say you talked with Mrs. Coley and you made the deal with her? A. Yes, first I made it with her agent, and then I went and talked with her and she agreed on everything. I was over there at the office with Mr. George and he talked to her from his office over the phone. She accepted the offer. I went over to the house a few minutes later and talked with her about the business. Q. Do you have any writing of any kind from her about this contract? A. Nothing, only through her agent. I talked with the real estate man and then went and talked with her and made her the offer. Todd M. George made the offer and he telephoned her and told her what kind of offer I made and she accepted it, so he said. He said she said she would take it. I went over and talked with her about the deal. She said she would take the offer to have the land (tax deed) set aside and pay all expenses and pay $150 net."

Mrs. Coley admitted that Mr. Teague came to see her about the land and testified: "The only understanding I had with Mr. Teague was that I was willing to sell the land and he was willing to buy it, provided he could correct some defects in the title he had spoken of. . . . I told Mr. Teague that I would give him a quitclaim deed to the land for the sum of $150, provided the deal was closed up promptly, but he did not pay me any money and I did not enter into any written agreement of any kind with him, neither did I authorize any person, directly or indirectly, to bind me in a contract or written agreement to sell the land to Mr. Teague or any other person."

Upon his return to Arkansas, Teague reported to his principal, Hall (appellee), and Hall on March 24, 1941, wrote T. M. George, Mrs. Coley's agent, in part, as follows: "I was over in Benton county for the week-end and saw Mr. Earl Teague after he had been up there to see you and Mrs. Coley about buying her 80 acres of land where Teague lives. He told me that you and Mrs. Coley had agreed that if we could get the tax deed issued by the State of Arkansas for nonpayment of taxes set aside, she would be willing to give us a warranty deed to the tract for $150. . . . I purchased the 40 acres just west of the land about three years ago," and requested the abstract to the land.

March 27, 1941, George, in answer, wrote Hall as follows: "I have your letter in which you request the abstract that covers the land in question between Mrs. Coley, Mr. Teague and yourself. I have just taken the matter up with Mrs. Coley who agrees that I send you the abstract, and expects you to take the responsibility for its safe return in the event this sale agreement is not consummated within a reasonable time. She also desires that it be fully understood that she is to get the $150 net in lieu of her warranty deed, and that she is not liable for any commissions, lawyers or abstracting, nor recording fees. However, if we can furnish any information or assistance of this kind that will help promote the deal we will gladly do so. Find herewith the abstract."

And, on March 31, following, Hall in answer to Mr. George's letter of the 27th, acknowledged receipt of the abstract of the land in question, and, among other things, said: "I understood the deal as explained by Mr. Teague to me was to include $150 cash for Mrs. Coley, with her to have no expense other than to furnish warranty deed."

Teague further testified that following his trip to Missouri and the correspondence, *supra*, he and Mr. Hall consulted Mr. Jeff Duty, an attorney, who advised that it would be necessary to clear the land of the claim of appellants, Blackburn and Smith, by virtue of their tax deed, before Mrs. Coley could convey good title to Hall. During this conference, Mr. Duty called Mr. George over long distance telephone. "I called Todd M. George in order to learn the whereabouts of Mrs. Coley and it was understood that she would call back, which she did in the afternoon. I told Mrs. Coley that the tax deed of Raymond Blackburn being on record would necessitate a lawsuit in order to clear it and she told me that if such a suit was brought, she was not to be out any of the court costs or attorneys' fees, but that Mr. Hall would pay them. I told her that they would be taken care of and that Mr. Hall would pay all the expenses of any litigation in court concerning the tax title. Mr. Hall told me that it had been his understanding that he would take care of the court costs and expenses. I then prepared the suit and filed it in this court against Raymond Blackburn and Beatrice Smith to cancel the tax title."

On May 8, 1941, within a few days after this telephone conversation with Mrs. Coley, Mr. Duty filed suit for Mrs. Wallace Coley against Raymond Blackburn and Beatrice Smith, to cancel their tax deed. Following the filing of this suit and after summons had been served upon Raymond Blackburn and Beatrice Smith, they went to Missouri, contacted Mrs. Coley and entered into a contract with her to purchase the 80-acre tract of land in question, and secured a deed dated September 23, 1941.

On May 22, 1941, Mrs. Coley filed "Stipulation for Dismissal" of her suit to cancel said tax deed on the ground that the suit had been filed without her consent

and that "the said cause of action has been amicably settled."

On August 21st, following, appellee, Hall, intervened, alleging that he had entered into a contract with Mrs. Coley to buy the tract of land in question for a consideration of $150, net to Mrs. Coley. He alleged that he had complied, in every way, with the contract and prayed for specific performance on the part of Mrs. Coley, that the tax deed be canceled and set aside, and that title be quieted in him, "upon his paying to plaintiff (Mrs. Coley) the amount set out in said contract."

Appellants, Blackburn and Smith, filed demurrer, which was overruled by the court and they then answered with a general denial. The court also overruled Mrs. Coley's "Stipulation for Dismissal," whereupon she filed answer to the intervention of appellee, Hall, setting up a general denial and affirmatively pleaded the statute of frauds as a defense.

Upon a trial, there was a decree in favor of appellee, Hall; title to the 80-acre tract of land in question was quieted in him, specific performance of the contract between Mrs. Coley and Mr. Hall was decreed against Mrs. Coley in favor of Mr. Hall and the tax deed held by Mr. Blackburn and Mrs. Smith was declared void. Appellants have appealed from all of the court's decree, except that part of the decree which canceled and declared void the tax deed of Mr. Blackburn and Mrs. Smith.

The principal contention of appellants for reversal is that the contract between appellee and Mrs. Coley, upon which appellee relies, falls within the statute of frauds and therefore is unenforceable. We cannot agree with this contention. The statute (§ 6059, Pope's Digest) provides that a contract for the sale of land is not binding unless a memorandum thereof "shall be made in writing and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized." On the record here, we think the preponderance of the testimony supports the trial court's finding that Mrs. Coley had clearly authorized T. M. George to act as her agent in dealing with appellee, Hall,

and the letters that passed between George, appellee Hall, and Hall's agent, Teague, constituted a sufficient memorandum of the contract to bind the parties and to take it out of the statute of frauds.

The terms and conditions of the contract, as stipulated in the letters, were sufficiently certain and definite. Mrs. Coley, by these terms, agreed to sell the 80-acre tract of land in question to Hall for $150 .net to her. It was understood and agreed that a suit would be necessary to cancel the outstanding tax title held by appellants, Blackburn and Smith, and that in addition to the $150 to be paid to Mrs. Coley, all costs of this suit were to be borne by appellee, Hall. It is certain, therefore, that one of the principal elements of the contract required that Hall, at his own expense, carry through a suit to. cancel the tax deed, *supra,* before Mrs. Coley, the owner of the land, could convey title to Hall. This being true, we think the trial court did not err and did not abuse its discretion, in denying Mrs. Coley's "Stipulation for Dismissal" of the suit which she had agreed should be filed. She could no more refuse to perform that provision of the contract than any other. She being the owner and record title holder of the land, it was necessary that suit be brought in her name. ·

Appellants' contention, that the testimony of Mr. Jeff Duty, attorney, was incompetent, as being a privileged communication and that he could not therefore testify without Mrs. Coley's consent (Pope's Digest, § 5156), is, we think, clearly without merit. In this case, appellants had challenged Mr. Duty's authority to file the suit in question on behalf of Mrs. Coley. In these circumstances, Mr. Duty, a practicing attorney and an officer of the court, not only had the right to testify as shown by the record, but we think it became his solemn duty to show that his acts were authorized. In *Heinemann Dry Goods Co.* v. *Schiff,* 167 Ark. 422, 268 S. W. 596, this court held: (Headnote 5) "Testimony of an attorney that he entered defendant's appearance pursuant to defendant's authorization was not incompetent as being a privileged communication between attorney and client, in view of the serious charge against the attor-

ney that he had entered defendant's appearance without authority."

Appellants also argue that the description of the land is not sufficient to identify it. The land is identified in the letter of March 24th from Mr. Hall to T. M. George, *supra*, as "her (Mrs. Coley's) .80 acres of land where Teague lives," and that it lies just west of a 40-acre tract of land owned by Mr. Hall. We think this description sufficient to identify the land.

This court in *Ashcraft* v. *Tucker*, 136 Ark. 447, 206 S. W. 896, said: "when there is a general designation of the property intended to be conveyed, parol evidence is competent to show what the proper description covers. For example: One person conveys to another his home farm. To identify the land, resort may be had to extrinsic evidence, to show what was meant by the home farm. Parol evidence has always been admitted to give effect to a written instrument, by applying it to its subject-matter."

Finding no error, the decree is affirmed.